In the

# United States Court of Appeals

## For the Seventh Circuit

———————

Nos. 19-1564 & 19-2156

CARMEN WALLACE, individually and on behalf of all others
similarly situated, *et al.*,

*Plaintiffs-Appellants*,

*v.*

GRUBHUB HOLDINGS, INC., and GRUBHUB, INC.,

*Defendants-Appellees*.

———————

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 18-cv-4538 — **Edmond E. Chang**, *Judge*.
No. 16-cv-6720 — **Charles R. Norgle**, *Judge*.

———————

ARGUED FEBRUARY 12, 2020 — DECIDED AUGUST 4, 2020

———————

Before BAUER, KANNE, and BARRETT, *Circuit Judges*.

BARRETT, *Circuit Judge*. Section 1 of the Federal Arbitration
Act exempts from the Act's coverage "contracts of employ-
ment" of two enumerated categories of workers—"seamen"
and "railroad employees." But it also exempts the contracts of
a residual category—"any other class of workers engaged in
foreign or interstate commerce." This appeal requires us to

decide whether food delivery drivers for Grubhub are exempt from the Act under § 1's residual category.

Grubhub calls itself an "online and mobile food-ordering and delivery marketplace." It provides a platform for diners to order takeout from local restaurants, either online or via its mobile app. When a diner places an order through Grubhub's app, Grubhub transmits the order to the restaurant, which then prepares the diner's meal. Once the food is ready, the diner can either pick it up herself or request that Grubhub dispatch a driver to deliver it to her.

Grubhub considers its drivers to be independent contractors rather than employees entitled to the protections of the Fair Labor Standards Act. The plaintiffs in these consolidated appeals—who worked as drivers in cities including Chicago, Portland, and New York—disagree. Between them, they filed two suits against Grubhub, alleging, among other things, that Grubhub violated the Fair Labor Standards Act by failing to pay them overtime. But their suits quickly hit a procedural roadblock. Each of the plaintiffs had signed a "Delivery Service Provider Agreement" that required them to submit to arbitration for "any and all claims" arising out of their relationship with Grubhub. In both cases, Grubhub moved to compel arbitration, and in both cases, the plaintiffs responded that the district court could not compel them to arbitrate because, as "workers engaged in foreign or interstate commerce," their contracts with Grubhub were exempt from the Federal Arbitration Act (FAA). Both district courts concluded that the FAA applied and compelled arbitration.

Enacted in 1925, the FAA was Congress's response to the general "hostility of American courts to the enforcement of arbitration agreements." *Circuit City Stores, Inc. v. Adams*, 532

U.S. 105, 111 (2001). It sought to replace that "widespread judicial hostility" with a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation omitted). In pursuit of that goal, the FAA sweeps broadly, "requir[ing] courts rigorously to enforce arbitration agreements according to their terms." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (citation and internal quotation marks omitted).

But its breadth is not unqualified. As relevant here, § 1 of the Act provides that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1.[1] In other words, it exempts two enumerated categories of workers—"seamen" and "railroad employees"—as well as what we will call the residual category—"any other class of workers engaged in foreign or interstate commerce." The plaintiffs insist that they fall within this last category. To decide whether they are right, we must determine what membership in that category requires.

As with any question of statutory interpretation, our inquiry "begins with the text." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). And the first thing we see in the text of the residual category is that the operative unit is a "class of workers." So we know that in determining whether the exemption applies, the question is "not whether the *individual worker* actually

---

[1] The Supreme Court has held that "contracts of employment" in § 1 includes not only contracts between employers and employees but also contracts with independent contractors. *See generally New Prime Inc. v. Oliveira*, 139 S. Ct. 532 (2019). So for present purposes, it is not important whether the plaintiffs here are employees, as they contend, or independent contractors.

engaged in interstate commerce, but whether *the class of workers to which the complaining worker belonged* engaged in interstate commerce." *Bacashihua v. U.S. Postal Serv.*, 859 F.2d 402, 405 (6th Cir. 1988) (emphasis added). That means that a member of the class qualifies for the exemption even if she does not personally "engage in interstate commerce." *Id.* By the same token, someone whose occupation is not defined by its engagement in interstate commerce does not qualify for the exemption just because she occasionally performs that kind of work. *Hill v. Rent-A-Center*, 398 F.3d 1286, 1289–90 (11th Cir. 2005).

That immediately leads to the next question: What does it mean for a class of workers to be "engaged in interstate commerce"? The Supreme Court's decision in *Circuit City* goes a long way toward providing an answer. In that case, the plaintiff argued that § 1's residual category reached all employment contracts within Congress's commerce power—essentially, all employment contracts—leaving the FAA applicable only to commercial arbitration agreements. 532 U.S. at 114. The Court rejected the proposition that the exemption was coterminous with Congress's authority to regulate employment contracts, holding instead that the residual clause applies only to the employment contracts of workers engaged in the movement of goods in interstate commerce. *Id.* at 119.

In reaching that result, the Court explained that the phrase "engaged in commerce" as used in § 1 meant something narrower than "affecting commerce" or "involving commerce" as used in § 2. While the latter two phrases evoke the full reach of Congress's commerce power, the phrase "engaged in commerce" has "a more limited reach," *id.* at 115, referring instead to "active employment" in interstate commerce. *Id.* at

116 (citation omitted). The narrower reading is confirmed by the presence of specific exemptions for "seamen" and "railroad workers," the Court said, for if the residual category were a blanket exemption for all employment contracts, these specific exemptions would have been wholly unnecessary. *Id.* at 114. Far from being superfluous, the enumerated categories play a key role in defining the scope of the residual clause, which should "be controlled and defined by reference to the enumerated categories of workers which are recited just before it." *Id.* at 115. That is to say, "[t]he wording of § 1 calls for the application of the maxim of *ejusdem generis*," *id.* at 114, the rule that "[w]here general words follow an enumeration of two or more things, they apply only to persons or things of the same general kind or class specifically mentioned." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 199 (2012). The residual clause, then, exempts only workers who are akin to "seamen" and "railroad employees," a category that the Court described as "transportation workers." *Circuit City*, 532 U.S. at 119.

Both we and our sister circuits have repeatedly emphasized that transportation workers are those who are "actually engaged in the movement of goods in interstate commerce." *Int'l Brotherhood of Teamsters Local Union No. 50 v. Kienstra Precast, LLC*, 702 F.3d 954, 956 (7th Cir. 2012) (quoting *Circuit City*, 532 U.S. at 112).[2] To determine whether a class of

---

[2] *See, e.g.*, *Waithaka v. Amazon.com, Inc.*, No. 19-1848, 2020 WL 4034997, at *11 (1st Cir. July 17, 2020) (asking whether the class to which a plaintiff belongs qualifies a class of "transportation workers 'engaged in … interstate commerce,' regardless of whether the [individual] workers themselves physically cross state lines" (citations omitted)); *Singh v. Uber Techs., Inc.*, 939 F.3d 210, 220 (3d Cir. 2019) (holding that the residual clause "only includes those other classes of workers 'who are actually engaged in the

workers meets that definition, we consider whether the inter-
state movement of goods is a central part of the class mem-
bers' job description. *Compare New Prime Inc. v. Oliveira*, 139 S.
Ct. 532, 539 (2019) (observing that interstate truckers are
plainly transportation workers), *with Hill*, 398 F.3d at 1289–90
(holding that furniture salespeople are not "transportation
workers" even if they occasionally deliver furniture to out-of-
state customers). Then, if such a class exists, we ask in turn
whether the plaintiff is a member of it. *Compare Kienstra Pre-
cast*, 702 F.3d at 957 (holding that truckers were part of the

---

movement of interstate or foreign commerce or in work so closely related
thereto as to be in practical effect part of it'" (citation omitted)); *Kienstra
Precast*, 702 F.3d at 956 (holding that "[b]y 'transportation workers,' the
Supreme Court meant workers, like the 'seamen and railroad employees'
expressly referenced in § 1, that are 'actually engaged in the movement of
goods in interstate commerce'" (citation omitted)); *Lenz v. Yellow Transp.,
Inc.*, 431 F.3d 348, 352–53 (8th Cir. 2005) (holding that a customer service
representative was not a "transportation worker" and thus not exempt un-
der § 1); *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286, 1289 (11th Cir. 2005)
("The emphasis, therefore, was on a class of workers in the transportation
industry, rather than on workers who incidentally transported goods in-
terstate as part of their job in an industry that would otherwise be unreg-
ulated."); *McWilliams v. Logicon, Inc.*, 143 F.3d 573, 576 (10th Cir. 1998)
(holding that § 1 "include[s] only employees actually engaged in the chan-
nels of foreign or interstate commerce"); *Cole v. Burns Int'l Sec. Servs.*, 105
F.3d 1465, 1471 (D.C. Cir. 1997) (holding that "section 1 of the FAA ex-
empts only the employment contracts of workers actually engaged in the
movement of goods in interstate commerce"); *Rojas v. TK Commc'ns, Inc.*,
87 F.3d 745, 747 (5th Cir. 1996) (holding that a radio DJ was not a worker
"engaged in interstate commerce"); *Asplundh Tree Expert Co. v. Bates*, 71
F.3d 592, 600–01 (6th Cir. 1995) (holding that § 1 "should be narrowly con-
strued to apply to employment contracts of seamen, railroad workers, and
any other class of workers actually engaged in the movement of goods in
interstate commerce in the same way that seamen and railroad workers
are").

class of interstate truckers because they hauled some deliveries across state lines), *with Lenz v. Yellow Transp., Inc.*, 431 F.3d 348, 351–53 (8th Cir. 2005) (holding that a customer service representative at an interstate trucking company was not a member of the relevant class). Sometimes that determination is easy to make—as it is for truckers who drive an interstate route. *See, e.g., New Prime*, 139 S. Ct. at 539. Sometimes that determination is harder—as it is for truckers who drive an intrastate leg of an interstate route. *See, e.g., Waithaka v. Amazon.com, Inc.*, No. 19-1848, 2020 WL 4034997, at *11 (1st Cir. July 17, 2020) (holding that a last-leg delivery driver qualified as a transportation worker). Whether easy or hard, though, the inquiry is always focused on the worker's active engagement in the enterprise of moving goods across interstate lines. That is the inquiry that *Circuit City* demands.

The plaintiffs in today's case, however, completely ignore the governing framework. Rather than focusing on whether they belong to a class of workers actively engaged in the movement of goods across interstate lines, the plaintiffs stress that they carry goods that have moved across state and even national lines. A package of potato chips, for instance, may travel across several states before landing in a meal prepared by a local restaurant and delivered by a Grubhub driver; likewise, a piece of dessert chocolate may have traveled all the way from Switzerland. The plaintiffs insist that delivering such goods brings their contracts with Grubhub within § 1 of the FAA. As they see it, the residual exemption is not so much about what the worker does as about where the goods have been.

But to fall within the exemption, the workers must be connected not simply to the goods, but to the act of moving those

goods across state or national borders. Put differently, a class of workers must themselves be "engaged *in the channels* of foreign or interstate commerce." *McWilliams v. Logicon, Inc.*, 143 F.3d 573, 576 (10th Cir. 1998) (emphasis added). That, after all, is what it means to be a transportation worker who performs work analogous to that of seamen and railroad employees, whose occupations are centered on the transport of goods in interstate or foreign commerce. By erasing that requirement from the statute, the plaintiffs' interpretation would sweep in numerous categories of workers whose occupations have nothing to do with interstate transport—for example, dry cleaners who deliver pressed shirts manufactured in Taiwan and ice cream truck drivers selling treats made with milk from an out-of-state dairy. That result would run afoul of the Court's instruction that the scope of the residual clause "be controlled and defined" by the work done by seamen and railroad workers, *Circuit City*, 532 U.S. at 106, not to mention its admonition that § 1 as a whole must be "afforded a narrow construction." *Id.* at 118.

The plaintiffs try to support their position by emphasizing that the FAA only applies to written agreements to arbitrate contained within a "contract evidencing a transaction involving commerce." 9 U.S.C. § 2; *see also New Prime*, 139 S. Ct. at 537. If they aren't "engaged in interstate commerce" for purposes of § 1, the plaintiffs ask, then how can their employment agreements "involv[e] commerce" for purposes of § 2? To put it another way: either they are engaged in commerce, so their contracts are exempt from the FAA under § 1, or they are *not* engaged in commerce, in which case their contracts are *still* exempt from the FAA under § 2. But the provisions create this catch-22 only if "engaged in commerce" and "involving commerce" mean the same thing, and as we have already

explained, the Supreme Court has squarely held that they do not. *Circuit City*, 532 U.S. at 115. To repeat, while § 2 expands the FAA's reach to the full extent of Congress's commerce power, *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–77 (1995), § 1 carves out a narrow exception from the FAA for a small number of workers who otherwise would fall within § 2's ambit. *Circuit City*, 532 U.S. at 115–16, 118–19. There is therefore nothing remarkable about an employment contract failing to meet § 1's more stringent "engaged in interstate commerce" requirement while still meeting the far broader "involving commerce" requirement of § 2. And given the breadth of Congress's Commerce Clause power, there can be no doubt that the plaintiffs' employment contracts fall comfortably within § 2.

\* \* \*

Section 1 of the FAA carves out a narrow exception to the obligation of federal courts to enforce arbitration agreements. To show that they fall within this exception, the plaintiffs had to demonstrate that the interstate movement of goods is a central part of the job description of the class of workers to which they belong. They did not even try do that, so both district courts were right to conclude that the plaintiffs' contracts with Grubhub do not fall within § 1 of the FAA.

Accordingly, the judgments are AFFIRMED.